## CHARLESTON SAVINGS INSTITUTION v. FARMERS' AND MERCHANTS' BANK.

1. EVIDENCE—BOOKS OF ACCOUNT.—It is not error to rule out books of account offered on statement of a witness that he had examined the books, knew them to be the books in question, and that he had them in Court.

2. NOTES—INDORSER.—The holder of a negotiable promissory note acquired before maturity for value is entitled to judgement for amount of note against indorser, whether he knew him to be an accommodation indorser or not.

3. IBID.—IBID.—In suit by holder of negotiable promissory note against indorser, that maker paid interest on renewal, can not be shown by indorser to prove that holder regarded the maker as the real debtor.

Before PURDY, J., Kershaw, October term, 1904. Affirmed.

Action by Charleston Savings Institution against Farmers' and Mechanics' Bank. From judgment for plaintiff, defendant appeals.

*Messrs. Kirkland & Smith* and *J. T. Hay,* for appellant, cite: *Case should have been sent to jury:* 2 Ency., 1 ed.. 351; 4 *Ibid.,* 225; 3 *Ibid.,* 2 ed., 800; 7 *Ibid.,* 788; 15 S. C., 92; 21 S. C., 557; 60 S. C., 293.

*Messrs. Smythe, Lee & Frost,* contra, cite: *Rule as to introduction of books:* 2 McM., 436; 1 Bay, 33; 4 McC., 76; 3 Rich., 354; 41 S. C., 152; *State* v. *Collins,* 15 S. C.; 63 S. C., 569; 72 Fed. R., 479; 3 S. & R., 29; 8 Am. Dec., 640; 36 N. H., 543; 13 N. J. Eq., 455; 45 N. H., 355; 38 Ill., 215. *Refusal to admit check:* 2 Hill, 350; 1 Strob., 478; 3 S. C., 214; 16 S. C., 514, 489; 75 N. Y., 124; 51 Vt., 559; 12 Gray, 216; 4 Ency., 2 ed., 339; 12 Gray, 345; 1 Dan. on Neg. Inst., 164; 2 Dan. on Neg. Inst., 260; 21 Ency., 2 ed., 526, 527; 60 N. Y., 386. *These notes are negotiable:* 48 S. C., 310. *What rights has holder of such paper:* 27 S. C., 132; 32 S. C., 545; 26 S. C.,

35—73

510. *Defendant's right to discount:* 1 Morse on Banks, sec 158; 51 S. C., 73. *Accommodation indorser:* 3 Ency., 2 ed., 801; 101 U. S., 181; 35 N. Y., 505; 16 N. Y., 128.

April 2, 1906. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. The plaintiff brought this action to recover upon two promissory notes, aggregating $10,000, some interest and $1.68 costs of the two protest fees thereon. After testimony and argument, the presiding Judge directed a verdict for the plaintiff. After said verdict and judgment thereon, the defendant appealed upon the following grounds :

"I. That his Honor erred in excluding from evidence the books of the Farmers' and Merchants' Bank, of Camden, S. C.; his Honor not having examined said books, and it not appearing how far said books were relevant to the controversy between the plaintiff and defendant.

"II. That his Honor erred in taking the case from the jury, and instructing them to find a verdict for the plaintiff, in this : (a) his Honor says: 'I have the power to rule out the books of a bank, and it was done, whether properly or improperly. In doing that, I cut you off from making such defense as you deemed proper, along that line; by ruling out the books of the bank, I apprehend I cut you off from making such proof as you would deem proper.' (b) His Honor says: 'That there is no proof of any fact, as the case stands now, that would defeat recovery. I may have cut off the means of showing that; may have done it properly or improperly. That is a question of law. I do not see anything for the jury to do but to act under instructions of Court, purely as a matter of law.'

"Whereas, it is submitted, that his Honor should have submitted to the jury, upon the whole evidence in the case, whether the plaintiff had notice that the defendant was an accommodation indorser, and, therefore, not liable.

"III. That his Honor erred in excluding from the evi-

dence the check given by DeKalb Cotton Mills in payment of interest on renewal of note; whereas, it is submitted, that such payment went to show that Charleston Savings Institution regarded DeKalb Cotton Mills the debtor, and not the Farmers' and Merchants' Bank."

We will now pass upon these exceptions.

I. It seems that on the 11th day of July, 1903, the DeKalb Cotton Mills, for a valuable consideration, made and delivered its two notes, each for $5,000, maturing, respectively, at four and five months after date, to the Farmers' and Merchants' Bank, Camden, S. C., payable at the Charleston Savings Institution, at Charleston, S. C., and that on the 12th day of July, 1903, said two notes were discounted by the Charleston Savings Institution—the proceeds of said discounted notes were remitted by the plaintiff, at the request of said Farmers' and Merchants' Bank, to and for said Farmers' and Merchants' Bank to the Western National Bank, New York. One of said notes when it fell due was renewed and a check of the DeKalb Cotton Mills was used to pay the interest due on the renewal note. After the renewal and after a protest for non-payment of both notes, the Charleston Savings Institution, of Charleston, S. C., brought its suit to recover the amount due on the two notes. The Farmers' and Merchants' Bank, of Camden, S. C., became insolvent. Its president and cashier both were dead, and a due assignment was made to the defendants. When the trial was in progress, the defendants introduced as their witness W. R. Pinckney, who was the accountant for the assignees and agents of the Farmers' and Merchants' Bank, of Camden, S. C. He was asked how long he had held that position and his answer was 1st December, 1903. It was admitted that the president, Mr. Boykin, and the cashier, Mr. E. C. Zemp, were both dead. As such accountant he testified that he had the books of said bank, and that he had examined them and that he had such books in Court. Thereupon, Mr. Smythe, as attorney for plaintiff, then said: "I object. The books of the Farmers' and

Merchants' Bank do not in any way effect the plaintiff in this case. They are not the books of the Charleston Savings Institution, not kept by the Charleston Savings Institution; what entries are in there we do not know, we did not make them and we do not know anything about them. The Charleston Savings Institution loaned its money to this bank. Suppose Mr. Pinckney will testify that there are no entries in these books about this thing, will that effect us? They are evidence against the bank, and not evidence against us in favor of the bank. We object to these books, no matter what is in them. They are the entries of the debtor himself, made by the debtor for his own use and benefit; cannot effect the Charleston Savings Institution."

Mr. Hay: "Here is the position. The president and cashier of the bank are both dead. What effect the books may have is a matter of argument for the jury, but it seems to me, it is clearly our right to introduce these books and show what, if anything, appears in them in connection with this transaction. The only way you are to prove the business of this concern is by the books of these dead men." Mr. Smith: "This answer sets up the fact that this note was for the benefit of the DeKalb Cotton Mills and not for the Farmers' and Merchants' Bank. I know of no way under the peculiar circumstances of this case (the president and cashier being dead), to show whether this note was for the benefit of the Farmers' and Merchants' Bank or the DeKalb Cotton Mills than the production of the book where the facts would appear. We submit the proposed line of evidence is competent."

The Court: "I think the objection is well taken at this stage." Mr. Hay: "Your Honor rules the books out?" The Court: "Yes, sir, at this stage."

Any evidence in regard to the books was not again offered. There was no offer to show what the contents of these books would show. There was no offer to prove the handwriting of any entry appearing in these books. It was simply announced by the accountant that these were the

books he had examined after the death of both the president and the cashier. His Honor's attention was not called to any entries in these books nor in whose handwriting they appeared to be made. His Honor only ruled the books of the defendant bank to be inadmissible at the stage at which they were offered. Under these circumstances, we do not think there was any error in the ruling of the Court as to this exception, and it is overruled.

II. The only witness other than Mr. Pinckney, was Mr. E. S. Vaux, who was examined as to the habits of banks in rediscounting notes. His testimony was admitted as that of an expert. His testimony in connection with the two notes in question, was: That it was rather unusual to make a note payable at any other bank than the bank of discount. Under his view, the note should have been drawn payable at the Farmers' and Merchants' Bank, Camden, S. C.; whereas, in the case of these two notes, they were made payable at the Charleston Savings Institution, Charleston, S. C. But this referred more to the form of the notes. No reason was advanced why the notes should not be drawn as they were. He knew nothing of the notes themselves and was allowed full opportunity to give his reasons for any supposed irregularity of the notes. Whereas, on the contrary, Mr. Cohen, as vice-president of the Charleston Savings Institution, had gone into this matter very fully as to these identical notes, wherein he stated that at the request of the president of the Farmers' and Merchants' Bank, of Camden, he had on the 12th of July, 1903, discounted them and had placed the proceeds, at the request of Mr. Boykin, in New York city to the credit of the Farmers' and Merchants' Bank, of Camden. This Court, in the case of *Mars* v. *Mars,* 27 S. C., 132, 135, 3 S. E., 60, where it was speaking of the rules governing such notes, said: "In the interest of commerce and trade, such papers have long been governed and controlled by principles of their own, which apply wherever they are made the subject or the instruments of a transaction. One of these prin-

ciples is, that a negotiable note when payable to bearer or when payable to the order of another, and has been indorsed by that other, is transferable by delivery, and if thus delivered before due, it is indefensible in the hands of the holder." The plaintiff claims the benefits which attach to the holder of a negotiable paper taken *bona fide* before maturity and for value. As stated by the plaintiff, "The power of the DeKalb Cotton Mills to make the note, and the power of the Farmers' and Merchants' Bank to indorse this note is not questioned." This exception must be overruled.

III. We do not think the Circuit Judge erred when he refused to admit in evidence the check given by the DeKalb Mills in payment of the interest due on the renewed notes. All it did was to pay the costs of the renewal. The DeKalb Mills was raising no question as to the use of its check and the Farmers' and Merchants' Bank could have no objection to thus reducing the note on which it was liable. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GARY *concurs in the result.*